ANTHONY J. KLATCH, II,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

Case No. 8:18-cv-778-T-27JSS
Criminal Case No. 8:17-cr-135-T-27JSS

## ORDER

**BEFORE THE COURT** are Petitioner Klatch's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. 3), Motion to Add Supplemental Arguments (Dkt. 18), and the United States' response (Dkt. 23). Upon review, his § 2255 motion is **DENIED**.

## BACKGROUND

In 2011, Klatch pleaded guilty to conspiracy, securities fraud, wire fraud, and money laundering in the Southern District of Alabama and was sentenced to 60 months in prison and 36 months of supervised release. (cr. Dkt. 13 at 20; cr. Dkt. S-26 at 13). His supervised release was transferred to the Middle District of Florida where, from December 2014 to December 2015, he defrauded investors of more than $500,000 through his company, Assurance Capital Management, LLC ("ACM"). (cr. Dkt. 13 at 20-21, 24). As a result of this conduct, his supervised release was revoked for failure to disclose financial information, pay restitution, and answer truthfully questions from his supervising probation officer. (cr. Dkt. S-26 at 15; Dkt. 3 at 16). He was sentenced to 9 months in prison, part of which was served at a residential reentry center in Tampa, and 27 months of supervised release. (cr. Dkt. S-26 at 15). This conduct also formed the basis for

his 2017 charge and conviction in the underlying criminal case which is the subject of his § 2255 motion, 8:17-cr-135-T-27JSS.[1]

According to Klatch, while he was in the residential reentry center, his fiancée, Lindsey Heim, became aware that the Federal Bureau of Investigation "was planning to seek an indictment against [him] for charges[] related to his supervised release revocation." (Dkt. 3 at 16; Dkt. 23-1 at 17). He fled from the residential reentry center to the Southern District of Florida, where he was arrested for using stolen credit card information and identity theft unrelated to the ACM scheme. (cr. Dkt. S-35 at 4-7; Dkt. 3 at 17; Dkt. 23-1 at 18). In the Southern District of Florida, he pleaded guilty and was sentenced to 39 months imprisonment. (cr. Dkt. S-26 at 16).

In January 2017, Klatch was charged for the 2014-15 fraudulent conduct in Tampa. (cr. Dkt. 1).[2] He pleaded guilty pursuant to a plea agreement to one count of wire fraud. (cr. Dkts. 11,

---

[1] The prosecutor explained at sentencing the decision to wait until 2017 to charge him:

> When the [Commodity Futures Trading Commission] started getting complaints from Mr. Klatch's victims in that course of conduct, they called Alabama who called me. And I handled first the violation hearing. . . . So we hadn't had time to completely investigate the new criminal conduct, but we knew enough that it violated his supervised release. We went forward on a violation hearing and he was sentenced by Judge Merryday, who at that time was handling the supervision matter, transferred from Alabama, and was sentenced to nine months.
>
> While he's in a halfway house serving that violation of supervised release, we are over here continuing our investigation with search warrants and grand jury subpoenas and financial analysis.
>
> He walks away from the halfway house . . . and then [he goes] on this multistate credit card fraud and identity theft bonanza that ends up with [him] getting caught in Miami.
> . . .
> I arranged for the FBI to go down to Miami and talk with Mr. Klatch while he's represented in Miami, and he said I want to take responsibility for the Tampa conduct. . . .
> I charged him by complaint [in 8:17-cr-135-T-27JSS] as a mechanism to get him [to Tampa] and he pled pursuant to an information and plea agreement.

(cr. Dkt. 45 at 23-24).

[2] Klatch waived prosecution by Indictment and consented to the criminal proceeding by Information. (cr. Dkt. 12).

13, 16). At the change of plea hearing, he testified he had been diagnosed with various psychological disorders, but they did not affect his ability to think clearly or to understand the proceedings. (cr. Dkt 44 at 5-6). He acknowledged that he had, with a few exceptions, waived his right to appeal, discussed the waiver with counsel, had no questions, and gave up his appellate rights freely and voluntarily. (Id. at 24-25). And he accepted as true the factual basis presented by the United States. (Id. at 29-35). The court found that he was competent and the plea was knowing and voluntary, accepted the guilty plea, and adjudicated him guilty. (cr. Dkts. 20-22).

In response to the initial presentence investigation report (PSR), his defense counsel sent the probation officer several written objections. (Dkt. 23-2 at 22-32). Counsel also filed letters in support of mitigation. (cr. Dkt. 28). At sentencing, counsel moved for a downward departure, contending the PSR's calculation "overrepresented" Klatch's criminal history. (cr. Dkt. 45 at 4-12; Dkt. 31). Counsel also called Dr. Valerie McClain, a psychologist, who conducted a forensic psychological evaluation of Klatch, and diagnosed him with psychological disorders. (cr. Dkt. 45 at 27-49).

Klatch faced a statutory maximum sentence of 20 years imprisonment. (cr. Dkt. S-26 at 25). His offense level 24 and criminal history category V resulted in a guidelines range of 92 to 115 months imprisonment. (Id.). He received a two-level upward adjustment for obstruction of justice and a reduction of three levels for acceptance of responsibility. (cr. Dkt. 45 at 25-27). He was sentenced to 115 months "consecutive to any outstanding sentence." (cr. Dkt. 45 at 64; cr. Dkt. 33).

In imposing the consecutive sentence, the court acknowledged the § 3553(a) factors, including the need for a sentence that reflects the seriousness of the offense, promotes respect for

the law, and protects the public from further crime by the defendant. (Dkt. 45 at 61-62, 70).

Although counsel objected to the "substantive reasonableness" of the sentence (cr. Dkt. 45 at 69-70), Klatch did not file a direct appeal. (Dkt. 3 at 1).

Klatch filed a timely § 2255 motion. (Dkt. 1). In his amended motion, he raised four grounds for relief. (Dkt. 3). Each ground states that the "supporting facts" are "extrapolated in attached exhibit A, paragraphs 1-78." (Dkt. 3 at 4-6, 8). Notwithstanding, it is not clear which paragraphs in the exhibit correspond to which grounds. Construed liberally, the majority of Klatch's claims are for ineffective assistance of counsel, which he "sum[s] up" as follows:

A) Failing to make this court aware of the [Southern District judge's] statements regarding [his] punishment and [his] mental healthcare despite [him] formally demanding this of counsel;
B) Failing to make this court aware that [he] received a variance for his mental healthcare just seven months prior without ever leaving custody;
C) Failing to prepare a presentencing memoranda that formally requested variances for [his] mental health care, for [his] time spent in state custody, and for [his] level of cooperation;
D) Failing to object to this court ruling that this sentence run consecutively, when such a ruling violates the Ex Post Facto clause of the U.S. Constitution as well as violating the recommendations of the U.S.S.G. Commission rules regarding the sentencing of an individual for related crimes via multiple charging instruments, as outlined in Chapter 5 of the guidelines; and
E) Failing to inform [him] that he would be subject to an enhancement for "Obstruction to Justice" prior to filing information in this case, as well as then, failing to object to this guideline enhancement because, although [his] actions were detrimental to his case, his actions lacked any mens rea in order to obstruct justice, which is easily provable by the fact that [he] willingly told on himself over three months before any formal charges being filed in this case.

(Id. at 22). He also brought additional claims in a motion to supplement,[3] arguing that (1) "counsel

---

[3] After filing an amended motion that did not specify grounds for relief or supporting facts, Klatch was directed to "file and serve a supplement to his amended § 2255 motion, separately numbering and identifying each claim and stating the facts supporting each claim, without additional argument." (Dkt. 14). In response, he filed a motion that only raised additional arguments. (Dkt. 18). Although the Court previously stated the arguments raised in this motion "are deemed the grounds he raises in his Amended § 2255 Motion to Vacate," (Dkt. 21), the Court will address all arguments raised by Klatch in his filings. *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

was ineffective in challenging paragraphs '33-37' of the final PSR . . . when counsel failed to argue that [Klatch's] alleged obstructive conduct was not presented by the [United States] in the 'Facts' section of [his] plea agreement"; and (2) "counsel was ineffective in challenging paragraph '101' of the PSR" because chapter 5 of the sentencing guidelines states that when crimes are similar "the worst offense should be used and all other offenses should run concurrent." (Dkt. 18 at 5).[4]

## DISCUSSION

In summary, Klatch raises claims relating to his consecutive sentence, his criminal history score, the obstruction of justice adjustment, counsel's failure to submit a sentencing memorandum, the reasonableness of his sentence, vindictive and selective prosecution, counsel's failure to mention at sentencing a variance for mental health he received in the Southern District, and counsel's advice not to appeal. Whether his claims are brought as ineffective assistance of counsel claims or otherwise, they are without merit.

To establish ineffective assistance of counsel, Klatch must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

---

[4] Because it is unclear which facts in his filings support which claims for relief, the analysis will proceed through his individual arguments, rather than by the enumerated grounds.

under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* at 824 (internal quotation marks and citations omitted); *see also Lafler v. Cooper*, 566 U.S. 156 (2012). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 214CV584FTM38MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

Because Klatch cannot demonstrate that his counsel's performance was constitutionally deficient or that he was prejudiced as a result of any deficiency, his ineffective assistance of counsel claims fail. Moreover, the grounds relating to his sentence that are not brought as

ineffective assistance counsel claims are not cognizable in a § 2255 proceeding. *See Marion v. United States*, No. 16-15971-G, 2017 WL 8233896, at *7 (11th Cir. Oct. 24, 2017); *see also Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014). And those claims are procedurally defaulted because he did not raise them on direct appeal. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." (internal quotation marks and citation omitted)).[5] Any other ground for relief is without merit, and an evidentiary hearing is not required.[6]

---

[5] The Eleventh Circuit explains:

> A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so. A claim is procedurally defaulted even if it was foreclosed explicitly by existing circuit precedent at the time of the defendant's direct appeal. Defendants can avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence.

*Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014) (citations omitted). Klatch has not established cause or prejudice on any claim. To the extent he may argue actual innocence to avoid procedural default, the argument fails. His motion to amend to raise a claim of actual innocence was denied as untimely and futile. (Dkt. 29). The claim also lacks merit for reasons addressed in that order.

After the denial of Klatch's motion to amend, he filed an Objection to United States' Response & Motion to Appoint Counsel. (Dkt. 30). He argues that the response does not address all of his claims and is therefore "inadequate and incomplete." (Id.). Specifically, he contends that because the response does not address the arguments raised in the motion to amend, the Court should not consider the response. However, the motion to amend has been denied. And even if the response does not address all of Klatch's claims, the files and records of the case conclusively show that he is not entitled to relief. Indeed, in his latest filing, he does not challenge the content of the United States' exhibits, including the averments in his counsel's affidavit. His motion to appoint counsel is accordingly denied.

The procedural default does not include ineffective assistance of counsel claims, which are typically brought in a collateral proceeding and not on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003); *United States v. Balcazar*, 775 F. App'x 657, 660 (11th Cir. 2019).

[6] An evidentiary hearing is not required if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

***Consecutive Sentence***

Klatch raises several arguments relating to his consecutive sentence. First, he argues a consecutive sentence was improper because the Southern District court imposed its sentence concurrent to any future sentence. (Dkt. 3 at 23). While he acknowledges that a judge cannot "require another judge to impose a concurrent rather than consecutive sentence in the future," *United States v. Rivas*, 649 F. App'x 761, 762 (11th Cir. 2016), he argues that application of *Rivas*, which was decided after his 2014-15 criminal conduct in the Middle District, would violate the ex post facto clause of the U.S. Constitution. (Dkt. 3 at 23-25). *Rivas*, however, merely confirmed that a judge cannot require another judge to impose a concurrent rather than a consecutive sentence. Applying *Rivas* to this case does not violate the ex post facto clause.

"The Constitution forbids the passage of *ex post facto* laws, a category that includes every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *United States v. Peugh*, 569 U.S. 530, 532-33 (2013) (citations and internal quotation marks omitted). An example is the imposition of sentencing guidelines that did not exist at the time of the offending conduct. *Id.*

Unlike the cases Klatch relies on, the time between his 2014-15 criminal conduct and his sentencing did not result in a conviction for conduct that was previously lawful, or a sentence under guidelines promulgated after his crimes were committed. *E.g.*, *id.*; *see also Miller v. Florida*, 482 U.S. 423 (1987). As the United States correctly points out, since Klatch had an undischarged term of imprisonment, his sentence could be imposed concurrently, partially concurrently, or consecutive to the undischarged term to "achieve a reasonable punishment for the instant offense."

(Dkt. 23 at 4); USSG §5G1.3.[7] Indeed, this Circuit recognizes that 18 U.S.C. § 3584(a) and the sentencing guidelines "evince a preference for a consecutive sentence when imprisonment terms are imposed at different times." *United States v. Ballard*, 6 F.3d 1502, 1506 (11th Cir. 1993); *United States v. Williams*, 592 F. App'x 828, 830 (11th Cir. 2014). Accordingly, Klatch's contention that it was error to impose a consecutive sentence is without merit.

Counsel was not ineffective in failing to raise a meritless argument, and Klatch suffered no prejudice because the court was authorized to impose a consecutive sentence, notwithstanding any objection. *See Street v. United States*, 359 F. App'x 109, 112 (11th Cir. 2009) ("Because there was no legal basis for objecting to [the defendant's] sentence, his counsel was not deficient for failing to do so and his failure to do so did not prejudice [him]."). Indeed, in his affidavit filed with the United States' response to the § 2255 motion, counsel avers that he did not object to the consecutive sentence because such an objection would not be "supported by law." (Dkt. 23-1 at 7). Notwithstanding, counsel did argue for a concurrent sentence, pointing out that the "federal judge in Miami ordered that his federal sentence run concurrent with any future sentence he was to receive," which the court acknowledged. (cr. Dkt. 45 at 6, 21). The PSR also noted the Southern District judge's ruling as well as the possibility of a consecutive sentence. (cr. Dkt. S-26 at 16, 25). Counsel's performance was not deficient, considering these facts.[8]

---

[7] In his motion to supplement, Klatch argues that "counsel was ineffective in challenging paragraph '101' of the PSR" because chapter 5 of the sentencing guidelines states that when crimes are similar "the worst offense should be used and all other offenses should run concurrent." (Dkt. 18 at 5). Paragraph 101 quoted USSG §5G1.3. He cites no authority for his argument, and in any event, the crimes were not sufficiently similar or related. He likewise contends that the USSG recommends that similar crimes are grouped and sentenced concurrently so there is only "incremental punishment" as the offense level increases. (Dkt. 3 at 23). Although the crimes in the Middle District and Southern District involve fraudulent conduct, they were not similar, related, or grouped together for sentencing.

[8] Klatch also argues that the 39-month and 115-month sentences, combined, exceed the guidelines maximum and therefore violate the Eighth Amendment, and that counsel was ineffective for failing to challenge the sentence on

Finally, to the extent he raises these claims independent of an ineffective assistance of

---

this basis. (Dkt. 3 at 23, 25). But his 115-month sentence was within the guideline range for the offense.

Additionally, he states he pleaded guilty, in part, "[b]ecause [he] believed that his cases would run concurrent . . ." (Id. at 19). He does not, however, tie this to an ineffective assistance of counsel claim, and any such claim would be unavailing. First, he does not state that he believed a consecutive sentence was not possible, or that counsel so advised him. As mentioned, the PSR noted the possibility of a consecutive sentence, notwithstanding the Southern District ruling. And, at that sentencing, the Southern District judge spoke in terms of "recommending," not imposing, a concurrent sentence. *United States v. Klatch, II*, 1:16-cr-20541-UU, ECF: 48 at 13, 22 (S.D. Fla. Jan. 3, 2017).

Moreover, in letters to his attorney, Klatch instructed him that their "goal" at sentencing was "a 39-month concurrent sentence with a second recommendation for Butner, as [the Southern District] did," (Dkt. 23-1 at 26), that they should ask the Middle District judge to "respect" the Southern District sentence, (id. at 28), to argue that a "39-month sentence to run concurrent is justified" (id. at 37) and that Klatch "asks for the same 39-month concurrent sentence today," (Dkt. 23-2 at 14). This language suggests he was aware of the possibility of a consecutive sentence. *See Hall v. Bradshaw*, 466 F. App'x 472, 474-75 (6th Cir. 2012) (rejecting ineffective assistance of counsel claim where defendant's urging to court for concurrent sentence indicated he was aware the court had discretion to impose a consecutive sentence).

Second, he does not contend that counsel failed to consult with him about the consequences of pleading guilty, including the possibility of consecutive sentences. Although counsel does not address the details in his affidavit, he avers that he "recall[ed] prior to sentencing having several in person discussions with Mr. Klatch regarding his sentencing [in the Southern District]." (Dkt. 23-1 at 4). And even if counsel did not discuss the possibility of a consecutive sentence, some courts have rejected claims that counsel was ineffective in failing to "ensure the defendant [is] informed his sentence may be imposed consecutively to sentences arising from prior convictions, where there is no statutory requirement the sentences run consecutively." *E.g.*, *State v. Mann*, 838 N.W.2d 869 (Iowa Ct. App. 2013).

Similarly, courts have generally rejected claims that counsel failed to advise on matters that are collateral to a guilty plea. *See, e.g.*, *Pickard v. Thompson*, 170 F. App'x 86, 87 (11th Cir. 2006) ("We have held that counsel is not constitutionally ineffective by failing to inform a defendant of 'collateral consequences' of a guilty plea'") (citations omitted); *see also Smith v. Georgia*, No. 1:14-CV-3515-TWT, 2015 WL 4940902, at *15 (N.D. Ga. Aug. 18, 2015). And courts have found that where a court has discretion to impose a consecutive sentence, that possibility is a collateral consequence of a guilty plea. *See, e.g.*, *United States v. Kikuyama*, 109 F.3d 536, 538 (9th Cir. 1997). Nonetheless, the statutory maximum of 20 years imprisonment was included in the plea agreement and, as required by Rule 11 of the Federal Rules of Criminal Procedure, addressed by the judge at the change of plea hearing. (cr. Dkt. 13 at 1; cr. Dkt. 44 at 25).

Though the court in *Rinckey v. McQuiggan*, 510 F. App'x 458 (6th Cir. 2013) found that the Sixth Amendment required counsel to inform his client about the possibility of consecutive sentences, that case involved consecutive sentences stemming from related criminal conduct. 510 F. App'x at 460. Additionally, the court upheld the denial of the ineffective assistance counsel claim because the record demonstrated the petitioner was nonetheless aware of the possibility of consecutive sentences. *Id.* at 461-63. The court also found it relevant that the petitioner never voiced any dissatisfaction with counsel at the change of plea hearing or sentencing. *Id.* at 463.

As discussed, the record reflects that Klatch was also aware of the possibility of consecutive sentences and did not inform the court of any dissatisfaction with counsel's performance prior to the § 2255 motion. Finally, he has not established, or even clearly stated, that he would have decided to proceed to trial if he had been aware of the possibility of a consecutive sentence. *See Grant v. United States*, No. 2:14CV682-WHA, 2016 WL 4374953, at *5 (M.D. Ala. July 28, 2016), *report and recommendation adopted*, WL 4370042 (M.D. Ala. Aug. 12, 2016).

counsel claim, his claims are procedurally defaulted, not cognizable in a § 2255 motion, and, in any event, without merit.

***Criminal History Score***

Klatch contends that application of his sentencing guidelines violated the ex post facto clause and Eighth Amendment, reasoning that "a criminal history score is calculated at the time of sentencing, and in most cases, due to the time factor of criminality, this leads to a lower criminal history score," and his intervening convictions resulted in an increased criminal history score. (Dkt. 3 at 26; cr. Dkt. S-26 at 15-17). Specifically, he argues that his criminal conduct in the Middle District occurred in 2014-15 and "had [he] been charged and convicted of that offense at that time . . . [he] would have likely been sentenced in this case with a Criminal History score of III instead of V." (Dkt. 3 at 26).[9] He cites no authority to support his contentions, which are without merit.

As discussed, an "*ex post facto* law is a law that punishes for conduct that was not criminal at the time it occurred or that increases the punishment for an act after the act is done." *United States v. Bucaro*, 898 F.2d 368, 371 (3d Cir. 1990) (citations omitted). The court in *Bucaro*, for example, held the sentencing guidelines did not violate the ex post facto clause in considering prior, juvenile convictions. As the court explained, the defendant

> is not now being punished for his juvenile conduct. The sentence he received in federal district court was for his involvement in a conspiracy to possess and distribute [controlled substances]. These actions were criminal at the time they were committed, and the guideline that took his prior conduct into account was in effect when he committed the criminal offenses for which the district court imposed the sentence he

_____

[9] Klatch seems to take issue with the USSG's definition of "prior sentence" in calculating a criminal history score as "a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense." USSG §4A1.2 n.1. As the guidelines clarify, a "sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." (citation omitted). Here, the Southern District sentence was imposed after the commencement of the Middle District offense, yet prior to sentencing.

now attacks. [The defendant] has not been given a sentence greater than that prescribed by law in effect at the time he committed these crimes. When [he] committed the federal offenses for which he was sentenced, the sentencing guidelines had already clearly provided that prior adjudications of juvenile delinquency were a relevant factor during sentencing. Thus, there is no basis to [his] *ex post facto* argument.

*Id.*, at 371; *cf. Gryger v. Burke,* 334 U.S. 728, 732 (1948) (fact that a conviction triggering habitual offender statute occurred before the statute was effective does not make statute invalidly retroactive, since the sentence was a "stiffened penalty for the latest crime" and not an "additional penalty for the earlier crimes").

Here, the challenged sentencing guidelines provision was in effect when Klatch committed his crime. He points to no law that was enacted after his conduct in Tampa that criminalized the conduct or increased the punishment. Accordingly, there is no ex post facto violation, and any related ineffective assistance of counsel claim likewise fails. (Dkt. 3 at 26). Counsel was not deficient for not raising a meritless argument, and Klatch suffered no prejudice. To the extent he raises these claims independent of an ineffective assistance of counsel claim, they are procedurally defaulted, not cognizable on a § 2255 motion, and, in any event, without merit.

***Obstruction of Justice***

Klatch challenges his counsel's failure to discuss with him and object to the obstruction of justice adjustment. (Dkt. 3 at 27).[10] Notwithstanding, the adjustment was appropriate because,

---

[10] USSG §3C1.1 provides that if a defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to an investigation, prosecution, or sentencing of the instant offense and the conduct was related to the defendant's offense of conviction and any relevant conduct or a closely related offense, the offense level is increased by two. Examples of qualifying conduct include "threatening, intimidating or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," and "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . ." USSG §3C1.1 n.4(A) & (D). Klatch's admitted conduct would satisfy either provision.

while in custody, Klatch directed Heim to transfer proceeds from a brokerage account to her personal account and tried to persuade her to no longer cooperate with the government. (Id.; cr. Dkt. 23 at 13). Klatch also challenges the factual basis of the adjustment, contending that (1) he thought he would only face a violation of his supervised release; (2) he directed Heim to move the proceeds four months after sentencing in the prior case, at which time he thought the funds were "cleared as investment capital that could be utilized by Heim"; (3) he did not intend to obstruct justice; and (4) he never threatened Heim to no longer cooperate and, at the time, was distraught and suffering from bipolar disorder. (Dkt. 3 at 27).[11]

Further, the United States explains that the parties' agreement to the adjustment was in exchange for the United States supporting a three-level reduction for acceptance of responsibility. (Dkt. 23 at 14). In his affidavit, Klatch's counsel explains:

> When Mr. Klatch's initial [PSR] was disclosed, Mr. Klatch was being denied a three level reduction for acceptance of responsibility, was being given a two level enhancement because a victim suffered a "substantial financial hardship," and was being given a two-level enhancement for the authorized transfer or use of a means of identification. . . .
>
> After meeting with Mr. Klatch, undersigned counsel filed 11 pages of guideline objections. . . .
>
> Part of defense counsel's success in prevailing on these objections was an agreement that the obstruction of justice enhancement was appropriate in exchange for an agreement that notwithstanding this obstructive conduct, Mr. Klatch would still receive a three level reduction for acceptance of responsibility.

---

[11] Klatch also contends that counsel should have argued against the obstruction adjustment because he had "a history of cooperation with authorities" and "even waived his indictment in this manner in order to assist the government as much as necessary," (Dkt. 3 at 27), and that this cooperation should have been addressed in a presentence memorandum, (Id. at 22). At sentencing, however, counsel pointed out the cooperation provision and noted "the government is obligated to let the court know the extent of that cooperation," (cr. Dkt. 45 at 27), which the government did. (Id. at 56-57). Counsel also added that "the proffer in Miami resulted in a 14-page single space report from the Bureau of Investigation" and "in total between Miami and [the Middle District] he debriefed eight separate times." (Id. at 61).

Based on this agreement, at the time of sentencing, the Government supported Mr. Klatch receiving a reduction for acceptance of responsibility, which had been questioned by the Court. Counsel was and is of the belief that Mr. Klatch's conduct as described in the Final [PSR] factually supports an obstruction of justice enhancement.

(Dkt. 23-1 at 8-9). The record shows that this agreement was explained at sentencing, and Klatch received the three-level reduction for acceptance of responsibility. (Dkt. 45 at 26).

Klatch does not demonstrate that counsel was ineffective in agreeing to the obstruction of justice adjustment in exchange for the three-level reduction for acceptance of responsibility.[12] A reasonable attorney could have agreed to this as a matter of strategy, especially since Klatch's conduct supported the obstruction adjustment. *See Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction adjustment).

Moreover, Klatch was not prejudiced because the adjustment was correctly imposed. (cr. Dkt. S-26 at 12); *see also United States v. Lee*, 743 F. App'x 296, 302 (11th Cir. 2018) (no error

---

[12] As noted, courts have generally rejected claims that counsel failed to advise on matters that are collateral to a guilty plea. This includes matters such as the possibility of an enhanced penalty for subsequent crimes. *See United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995). Additionally, courts have found no deficient performance in counsel's failure to explain sentencing guidelines to defendants, or failure to accurately predict how the guidelines would apply. *See, e.g.*, *Cuevas v. United States*, No. 8:11-cv-240-T-27AEP, 2012 WL 1883761, at *3 (M.D. Fla. May 22, 2012) (counsel's failure to advise defendant of possible career offender enhancement not ineffective assistance); *Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994), *cert. denied*, 495 U.S. 909 (1990) (same); *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994) ("Misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").

Any failure to address a possible obstruction adjustment, or explain or predict the guidelines range, was similarly related to a collateral matter and does not by itself constitute ineffective assistance. Klatch cites no authority finding ineffective assistance in failing to inquire about facts that may be relevant to an obstruction adjustment prior to a guilty plea. And he does not establish prejudice, since he does not show that had he been aware of the possibility of an obstruction adjustment he would have proceeded to trial. *See Thomas*, 27 F.3d at 326. Regardless, when he pleaded guilty, he was aware of the sentencing guidelines and the facts that gave rise to the adjustment.

in applying obstruction adjustment to defendant who called girlfriend from jail and instructed her to destroy evidence). Although Klatch argues that his attorney should have objected to the relevant paragraphs in the PSR,[13] he nonetheless seems to admit the conduct that triggered the adjustment. Specifically, he admits to directing Heim to transfer the proceeds. (Dkt. 3 at 27). Indeed, Heim was charged with and pleaded guilty to obstruction of justice for transferring the proceeds in the Middle District of Florida, case number 8:17-cr-71-T-23AEP.[14] And Klatch's explanation that when he told Heim not to cooperate with law enforcement he "was very distraught due to the loss of Heim as well as her lack of correspondence with him, which led his Bipolar Disorder to act irrationally," does not establish a basis for objecting to the obstruction adjustment. (Id.).

Finally, Klatch does not demonstrate his counsel was ineffective in failing to challenge the relevant paragraphs in the PSR. As noted, counsel's strategy was to agree to the obstruction adjustment in exchange for the three-level reduction for acceptance of responsibility. Challenging the relevant paragraphs in the PSR would have run counter to this strategy. A reasonable attorney, moreover, would have understood that the United States could and would have presented the

---

[13] In his motion to supplement, Klatch argues that "counsel was ineffective in challenging paragraphs '33-37' of the final PSR agreement when counsel failed to argue that [Klatch's] alleged obstructive conduct was not presented" in the facts section of the plea agreement. (Dkt. 18 at 5). Those paragraphs relate to Klatch's call to Heim directing her to transfer proceeds from ACM's accounts to a personal bank account, their subsequent flight to Miami, and his communications with Heim to persuade her not to cooperate with the government. (Dkt. S-26 at 9-10). He also disputes counsel's representation that Klatch "agree[d] that his communications with Ms. Heim to transfer funds out of a bank account prior to seizure of the funds would constitute obstruction." (Dkt. 18 at 7). However, in counsel's letter to the probation officer, counsel *did* object to the conclusion that the letters were an attempt to persuade Heim to not cooperate with the government. (Dkt. 23-2 at 28). Notwithstanding this dispute, it is unnecessary to conduct an evidentiary inquiry because the conduct underlying the obstruction adjustment, independent of the money transfer, was undisputed.

[14] In pleading guilty, Heim admitted to the factual basis of the plea agreement, including that "Klatch advised Heim to remove proceeds from the [ACM] fraud, relocate them to new accounts, and/or use the funds to conduct trades in order to make more money for themselves before the funds were frozen or seized by the financial institutions or law enforcement. Heim agreed, knowing that the FBI was conducting the aforementioned investigation and knowing that the funds in the various brokerage and bank accounts were the proceeds of fraud." *United States v. Heim*, 8:17-cr-71-T-23AEP, ECF: 3 at 21 (M.D. Fla. Feb. 17, 2017).

evidence of obstruction, in any event, as counsel acknowledges and Klatch does not dispute. (Dkt. 23-1 at 7, 20-21; Dkt. 23-2 at 26); *see also United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995) (internal citations omitted) ("When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence.").[15]

In sum, counsel was not ineffective in failing to raise a meritless argument, and Klatch suffered no prejudice because the obstruction adjustment was correctly imposed. To the extent he raises these claims independent of an ineffective assistance of counsel claim, they are procedurally defaulted, not cognizable on a § 2255 motion, and, in any event, without merit.

### *Sentencing Memorandum*

Klatch contends that counsel was ineffective in not filing a pre-sentencing memorandum to address these issues. (Dkt. 3 at 28). Counsel explains:

> Given Mr. Klatch's extensive fraud related criminal history, the issues regarding his letter writing to his co-conspirator ex-girlfriend, and that I would be presenting the in court testimony of Dr. McClain in mitigation of his sentence, I concluded that a better strategy for Mr. Klatch was to make all three arguments orally at the time of sentencing. Mr. Klatch and I discussed the strategy reasons for not filing a sentencing memorandum and I do not recall him voicing an objection to my strategy.

(Dkt. 23-1 at 7).

Failing to file a sentencing memorandum is not ineffective, when counsel files objections to a PSR. *E.g.*, *Reid v. United States*, No. 4:10-CV-583 CAS, 2010 WL 3829397, at *10-11 (E.D.

---

[15] Finally, he contends that it was improper for the sentencing court to simultaneously apply the adjustment and consider any obstructive conduct in sentencing at the high end of the guidelines. (Dkt. 3 at 28). He does not cite any authority for this proposition, and acknowledges that "cause exists to recommend the high-end of the guidelines, as he is a repeat offender." (Dkt. 3 at 30).

Mo. Sept. 23, 2010). The attorney in *Reid* explained he "was concerned any content contained within a sentencing memorandum could be used by the government to hinder movant's ability to appeal or to argue for an enhanced sentence." *Id.*; *see also Rickard v. United States*, No. CIV.A. 10-4089 JLL, 2011 WL 3610413, at *8 (D.N.J. Aug. 16, 2011). Likewise, a reasonable attorney could have decided the better strategy was to present testimony and oral argument in mitigation, while forgoing a sentencing memorandum. And Klatch does not explain how a sentencing memorandum would have produced a different sentence. *See United States v. Lian*, 391 F. App'x 969, 971 (2d Cir. 2010) (finding no ineffective assistance where "counsel did not submit a sentencing memorandum [but] did advocate on [the defendant's] behalf"). The claim is therefore due to be denied.

### Reasonableness of the Sentence

Klatch also contends his sentence was unreasonable. (Dkt. 3 at 29-30).[16] As noted, however, a challenge to the reasonableness of a sentence is not cognizable in a § 2255 proceeding. *See Marion*, 2017 WL 8233896, at *7; *Spencer*, 773 F.3d at 1139. In any event, the claim is procedurally defaulted because he did not raise it on direct appeal. *See McKay*, 657 F.3d at 1196.

### Vindictive and Selective Prosecution

Klatch contends that counsel was ineffective "in addressing whether or not there existed a

---

[16] Klatch notes that he "must question as to whether or not the [undersigned] held some type of bias against [him] to craft a cruel and unreasonable sentence" and that the district judges in the Middle District may have colluded against him. (Dkt. 3 at 20, 30). To the extent he raises a bias or partiality claim, he has not demonstrated that the impartiality of the judges might reasonably be questioned or that any judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455. "Just because [rulings at trial and sentencing] were not in [a defendant's] favor does not mean that they establish any bias or prejudice." *United States v. Akel*, 610 F. App'x 875, 876-77 (11th Cir. 2015) (citations omitted).

basis to dismiss [the] charge against him for 'Vindictive or Selective [Prosecution]' based on Rule 12(b)(3)(A)(iv) of the Federal Rules of Criminal Procedure." (Dkt. 3 at 31). The purported basis for this contention is the delay between when the U.S. Attorney's Office became aware of his criminal conduct and when he was charged. (Id.). And according to Klatch, the assigned prosecutor initially told his Southern District counsel that she "was willing to encompass the charges for this case in a nine month violation. Yet, this was never relayed to [him]." (Id.). Klatch explains:

> In early November, 2016, [his] counsel was presented with a proffer agreement from the Middle District of Florida, and [he] agreed to speak with FBI Agent Maritza Conde-Vaizquez, with the purpose of combining both charges prior to [him] being sentenced in the S.D. of Florida case. Again, despite being timely and despite being proactive regarding this proffer the Tampa U.S. Attorney's office continued to wait with formally charging [him] until late January 2017, which was approximately 18-months after [his] Supervised Released revocation.

(Dkt. 3 at 18).

Even accepting Klatch's allegations as true, nothing he complains of rises to the level of vindictive prosecution.[17] Counsel is not ineffective in failing to raise a frivolous argument.

"As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) (citation omitted). But a prosecutor violates due process if he obtains new charges out of vindictiveness, or a "desire to punish a person for exercising his [statutory or constitutional] rights." *Id.* (citation omitted). Such a claim requires showing: (1) a presumption of vindictiveness based on the government's

---

[17] Klatch does not seem to argue that the prosecution was selective, which has a "demanding" standard requiring him to show "by clear evidence that the alleged selective prosecution had a discriminatory effect and that it was motivated by a discriminatory purpose." *Scott v. United States*, 232 F. App'x 898, 900 (11th Cir. 2007) (internal quotation marks and citation omitted). In any event, there is no evidence of discrimination.

conduct; or (2) actual vindictiveness. *See, e.g.*, *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008); *Barner*, 441 F.3d at 1312, 1322 (reversing district court's determination that there was evidence to establish a presumption of vindictiveness but remanding for determination of actual vindictiveness). There is no presumption of vindictiveness when a prosecutor increases charges after a defendant exercises a legal right in the pretrial context. *Barner*, 441 F.3d at 1316. A presumption of vindictiveness arises in the pretrial context only if the facts of the case "form a realistic likelihood of vindictiveness." *Id.* at 1318. And a claim of actual vindictiveness requires a defendant to prove: (1) the prosecutor sought to punish the defendant for exercising his rights (animus); and (2) the prosecutor's animus caused the prosecutor to bring charges of increased severity (causation). *Id.* at 1322.

Defense counsel was not ineffective in failing to move for dismissal, and Klatch did not suffer prejudice, because he could not establish a presumption of vindictiveness or actual vindictiveness. Klatch never faced charges of increased severity. Although the U.S. Attorney's Office apparently considered limiting its prosecution to a violation of supervised release, he was not formally charged at the time. And he cannot point to the exercise of any pretrial, much less pre-charge, rights that led to charges of increased severity. Moreover, a delay in prosecution without any realistic likelihood of vindictiveness is insufficient to support a Rule 12(b)(3)(A)(iv) claim. Finally, he presents no evidence of actual vindictiveness. This claim is therefore due to be denied.

### *Mental Health*

Klatch contends that counsel was ineffective in not mentioning the variance he received in the Southern District and that judge's statements about his mental health. (Dkt. 3 at 30). His

counsel explains:

> I [had] several in person discussions with Mr. Klatch regarding his sentencing before [the Southern District judge], reviewing the sentencing transcript from that sentencing, and speaking with the Southern District of Florida Assistant Federal Public Defender regarding how he obtained a downward variance for Mr. Klatch in [that case]. . . [N]o expert testimony was presented and defense counsel argued for sentencing mitigation regarding Mr. Klatch's noted mental health history in his [PSR].

> . . . [I] retained Dr. Valerie R. McClain, a licensed Psychologist who evaluated Mr. Klatch and who testified at Mr. Klatch's sentencing hearing in mitigation of his sentence. Additionally [I] highlighted Mr. Klatch's family and personal history of mental health noted in his [PSR] in mitigation of his sentence and requested a variance down to a sentencing range of 77-96 months.

> . . . Mr. Klatch wanted [me] to highlight that he had received a variance from the Southern District and . . . [I] was of the belief that presenting mental health mitigation without reference to [the variance] was the better approach with this Court.

(Dkt. 23-1 at 4-6).

Counsel's decision not to mention or rely on the variance Klatch received in the Southern District was a reasonable strategy. Klatch has not demonstrated that his counsel was ineffective in presenting a psychologist to testify about his mental health, addressing mental health with the sentencing court, (cr. Dkt. 45 at 49-54), and relying on the facts about family and personal history in the PSR. And he cites no authority supporting his contention.

Finally, he cannot establish a reasonable probability that, if counsel had informed the sentencing court about the prior variance, a different sentence would have been imposed. This claim of ineffective assistance of counsel is therefore due to be denied.

### Credit for Time Served

Klatch also argues that counsel was ineffective in not requesting credit for time served on

a state sentence. (Dkt. 3 at 28). According to Klatch, after being sentenced in the Southern District, he "returned to Miami-Dade Jail to resolve his initial arrest from the Aventura, Florida police department, where he was given 'Credit Time Served' for 237-days of jail time. This jail credit is not being counted by the BOP since [he] was under state custody. Therefore, these nine months should have been adjusted by this court at sentencing." (Id. at 19).

A similar claim was raised in *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). There, the petitioner contended that counsel was ineffective in failing to request credit for time served on a state law sentence. *Nyhuis*, 211 F.3d at 1346. In rejecting this claim, the court explained:

> This argument is without merit. Sentencing Guideline § 5G1.3 does not authorize a district court to grant credit for time served prior to the imposition of sentence. The granting of credit for time served is in the first instance an administrative, not a judicial, function. A claim for credit for time served is brought under 28 U.S.C. § 2241 after the exhaustion of administrative remedies. . . .
>
> [Petitioner's] claim of ineffective assistance of counsel, therefore, fails because he has not shown that his counsel's performance was deficient or that the outcome of the proceedings would have been different but for counsel's allegedly deficient performance.

*Id.* at 1345-46 (internal quotation marks and citations omitted); *see also United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018).

Counsel was not ineffective in failing to raise a frivolous argument, and Klatch suffered no prejudice because a request for credit for time served would not have been granted. Accordingly, this claim is due to be denied.

***Advice about Appeal***

Klatch argues in passing that counsel was ineffective in advising him to "not seek an appeal

for a sentence that is clearly unreasonable." (Dkt. 3 at 25). This claim is without merit because he has not established that counsel did not consult with him or gave deficient advice about an appeal, particularly considering his plea agreement's limitation on the grounds for appeal.

"Counsel has a constitutional duty to consult with a defendant about an appeal when: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing." *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) (citation omitted). "In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." *Otero v. United States*, 499 F.3d 1267, 1271 (11th Cir. 2007) (citation omitted). In finding that no rational defendant would have taken an appeal, the court in *Otero* noted the plea agreement "expressly waive[d] the right to appeal [his] sentence, directly or collaterally, on any ground," with exceptions for an upward departure by the judge, a sentence above the statutory maximum or in violation of the law apart from sentencing guidelines, or if the government appealed. *Id.* Because of the "agreement's broad appeal waiver, any appeal taken . . . would have been frivolous and would have been an appeal that no rational defendant would have taken." *Id.*; *see also Devine v. United States,* 520 F.3d 1286, 1288 (11th Cir. 2008).

Similarly, in Klatch's plea agreement, he

> expressly waive[d] the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range *as determined by the Court* pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution . . . .

(cr. Dkt. 13 at 17 (emphasis in original)). Such a waiver broadly limits the claims that could be raised on appeal.[18] Indeed, Klatch does not argue that his sentence for the one count of wire fraud exceeds the applicable guidelines range or the statutory maximum penalty. A rational defendant, moreover, would recognize that any Eighth Amendment argument would be unsupported by law and unavailing.[19] Accordingly, there were no non-frivolous claims for appeal. And, significantly, apart from his current statements, there is no indication that Klatch reasonably demonstrated an interest in appealing to counsel after he was sentenced.

Klatch has not established that counsel failed to satisfy his duty to consult with him. This requires counsel to inform the defendant about the right to appeal, to explain the advantages and disadvantages, and make a reasonable effort to determine whether the defendant wishes to pursue an appeal. *See Thompson*, 504 F.3d at 1206.

Klatch does not contend that his counsel refused his request to appeal. *See, e.g.*, *Roe v. Flores-Ortega*, 528 U.S. 470, 477-86 (2000). Nor does he contend that counsel failed to adequately consult with him. Rather, at the change of plea hearing, he testified that he had, apart from a few exceptions, waived his right to appeal, discussed the waiver with counsel, had no questions about it, and gave up his appellate rights freely and voluntarily. (cr. Dkt. 44 at 24-25). And he does not

---

[18] Notably, the waiver did not "contain[] express language waiving the right to attack a sentence collaterally," which would have prevented Klatch from "collaterally attacking [his] sentence on the basis of ineffective assistance of counsel." *Thompson v. United States*, 353 F. App'x 234, 235-36 (11th Cir. 2009).

[19] The Court is mindful that the "putative merits" of any appeal are not to be considered as it relates to possible prejudice for ineffective assistance of counsel. *Thompson*, 504 F.3d at 1207-08. Rather, to establish that he was prejudiced by counsel's failure to effectively advise on a possible appeal, Klatch must show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* (citation omitted). Because counsel was not deficient, it is unnecessary to resolve the question of prejudice.

allege that, following the sentencing, counsel failed to consult with him about the possibility of an appeal. His only complaint is that counsel advised against an appeal, which was reasonable, considering the language of the plea agreement. Accordingly, an evidentiary inquiry is unnecessary, as the record demonstrates a knowing waiver of the right to appeal, and that counsel satisfied his constitutional obligation.[20]

In sum, Klatch cannot demonstrate that counsel was deficient. Accordingly, his final claim fails.[21]

### IV.    Certificate of Appealability Denial

Klatch is not entitled to a certificate of appealability (COA). (Dkt. 3 at 33); 28 U.S.C. § 2253(c)(1). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted). Klatch has not and cannot meet this standard. Because he is not entitled to a COA, he is not entitled to appeal in forma pauperis.

---

[20] Even if counsel does not consult with a defendant, his performance may not be deficient, depending on the circumstances of the case. *See Flores-Ortega*, 528 U.S. at 479; *see also Hatcher v. United States*, No. 114CR145WSDJSA1, 2016 WL 11488909, at *7-8 (N.D. Ga. July 19, 2016), *report and recommendation adopted*, No. 1:14-CR-145-WSD-1, 2018 WL 2455274 (N.D. Ga. June 1, 2018).

[21] In ground VII, he contends that the "way in which this case was processed violated his due process rights," but does not cite any authority supporting this contention. (Dkt. 3 at 31).

## CONCLUSION

Klatch's § 2255 motion, construed request for a certificate of appealability, and motion to appoint counsel are **DENIED**. (Dkts. 3, 18, 30). The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** this 15th day of November, 2019.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record